IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| GREGORY SCHURING, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | 13 C 7142 |
| COTTRELL, INC., et al., | ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Cottrell, Inc. moves for judgment on the pleadings in this personal injury action based on theories of judicial estoppel [43] and complete preemption [44]. Plaintiff Gregory Schuring and his wife Mary Schuring sued Cottrell for negligence, strict liability, breach of implied warranty, and willful and wanton conduct in connection with an injury that Mr. Schuring suffered when he fell off of a car hauler rig that Cottrell manufactured. For the reasons stated below, both motions are denied.

## BACKGROUND

The Court takes the following allegations from the Complaint as true for the purposes of this opinion. *See Harrison v. Deere & Co.*, 533 F. App'x 644, 647 (7th Cir. 2013). Mr. Schuring is an employee of Cassens Transport Company, which is not a party to this action. Mr. Schuring works as a car hauler. Mr. Schuring's employment is subject to a collective bargaining agreement ("CBA") with Cassens. In part, that CBA sets certain safety standards to which the equipment used by Cassens employees must conform. Cottrell is a Georgia corporation that

manufactures, among other things, car hauler rigs. Mr. Schuring suffered an injury when he fell from a car hauler with a head ramp that Cottrell manufactured.

## LEGAL STANDARD

Rule 12(c) allows a party to move for judgment based on the content of the pleadings after both the plaintiff's complaint and the defendant's answer have been filed. *See* Fed. R. Civ. P. 12(c); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). The Court reviews Rule 12(c) motions under the same standards that apply to Rule 12(b)(6) motions. *See Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012). The Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Id.* The Court "need not ignore facts set forth in the complaint that undermine the plaintiff's claim or give weight to unsupported conclusions of law." *Buchanan-Moore v. Cnty. Of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). The Court may consider the pleadings alone, which documents include the complaint, the answer, and any documents attached thereto. *See Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "In general, if matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *United States v. Rogers Cartage, Co.*, 794 F.3d 854, 861 (7th Cir. 2015) (quoting Fed. R. Civ. P. 12(d)).

## DISCUSSION

### I. Judicial Estoppel is not Applicable

"The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)) Though no rigid formulation for the application of judicial estoppel exists,

courts generally consider three factors: "(1) whether the party's positions in the two litigations are clearly inconsistent; (2) whether the party successfully persuaded a court to accept its earlier position; and (3) whether the party would derive an unfair advantage if not judicially estopped." *Id.*; *see also In re Knight-Celotex, LLC*, 695 F.3d 714, 722 (7th Cir. 2012) (describing factors as "general guideposts that must be considered in the context of all the relevant equities in any given case"). Because of the flexible nature of the doctrine, a non-party's conduct can, under limited circumstances, estop a party from making certain arguments. *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013). When a party asserts judicial estoppel based on a non-party's conduct, the Court engages in an equitable inquiry into the non-party's relationship with the party to be estopped and the effects of the non-party's conduct. *See id.* Only in "unusual circumstances" is it equitable to attribute the actions of a non-party to a party for the purposes of judicial estoppel. *See id.*

Here, Cottrell argues that the Court should attribute the assertions of a plaintiff in another civil case pending in this District, namely *Poulter v. Cottrell*, 12 C 1071, to the Schurings and find them estopped from asserting that Cassens and Cottrell worked together to design the equipment at issue. Both cases involve Cassens employees who fell off of Cottrell equipment and subsequently sued Cottrell. Allegedly, the plaintiff in *Poulter* asserted that Cottrell acted alone in the design and manufacture of the equipment off of which Poulter fell. On the contrary, here, the Schurings have alleged in their complaint that Cassens Corporation "participated in and exercised control over the design and testing process of Cottrell trailers[.]" (Compl. Count V ¶ 8). While the Schurings were not parties in *Poulter*, Cottrell seeks to hold those conflicting assertions against the Schurings because Mr. Poulter and Mr. Schuring: (1) worked at the same company; (2) suffered similar injuries; (3) belong to the same union; and (4) are represented by

the same attorney. None of these arguments supports the application of judicial estoppel against the Schurings.

The extraordinary "unusual circumstances" present in *Grochocinski* that warranted the application of non-party judicial estoppel are not present here. The facts of *Grochocinski* were unique. The case originated as a contract dispute between CMGT, Inc. and Spehar Capital, a company hired by CMGT to help it find financing. *See Grochocinski*, 719 F.3d at 788. Spehar sued CMGT in a California state court, CMGT never appeared to defend the suit, and Spehar walked away with a $17,045,780 default judgment against CMGT. *Id.* at 791. This forced CMGT into bankruptcy and Grochocinski was appointed as trustee. *Id.* Shortly after the appointment, Spehar approached Grochocinski and encouraged him to bring a malpractice suit against CMGT's attorneys for failing to defend the California suit, which Spehar had already won by default, in an effort to recover the judgment award from the attorneys. *Id.* at 792. Grochocinski was originally reluctant to invest in the malpractice litigation because the CMGT estate had no assets and a recovery would benefit only one creditor: Spehar. *Id.* Nevertheless, Grochocinski and Spehar entered into an agreement where Spehar would fund the investigation into the malpractice claims and, if successful, would receive eighty to ninety percent of the recovery. *Id.* Spehar chose the lawyer for the investigation and Grochocinski eventually filed suit against CMGT's lawyers in Illinois. *Id.* at 793.

Armed with these exceptional facts, the Seventh Circuit concluded that Spehar's conduct in the California suit barred Grochocinski's attempt to recover from CMGT's lawyers in Illinois, finding that Spehar, in reality, spearheaded both suits:

> This is not merely a case where the creditor of an estate previously took a litigation position inconsistent with a position taken by the trustee. Rather, Spehar Capital was intimately involved in the genesis and the hoped-for end of this suit. Spehar Capital forced

> CMGT into bankruptcy for the purpose of allowing this suit to be brought and, after filing the bankruptcy petition, worked tirelessly to convince the trustee to bring suit . . . The district court's opinion clearly showed Spehar Capital's intimate involvement in this case . . . this suit would not have been brought but for Spehar Capital and the bulk of any recovery would wind up in its pockets[.]

*Id.* at 796-97. Accordingly, the court ruled that Spehar's position in the earlier litigation precluded Grochocinski from attempting to recover from CMGT's lawyers in the subsequent suit.

The doctrine of judicial estoppel does not bar the Schurings from proceeding because the connections between the Schurings and Poulter are non-existent when compared to those in *Grochocinski*. Accepting (without deciding) for the purposes of this motion that judicial estoppel would be appropriate if the Schurings themselves had been parties to the previous action, no "unusual circumstances" exist that would cause the equities to weigh in favor of applying the doctrine based on the conduct of a non-party. *Id.* at 795. None of the connections between Poulter and the Schurings that Cottrell asserts demonstrate, or even imply, that the Schurings had any involvement or influence in the previous lawsuit, let alone that they were "intimately involved in the genesis and the hoped-for end result" of that suit. *Id.* at 797. Indeed, the Schurings would not stand to gain anything from Poulter's success. *Cf. Amari Co. v. Burgess*, 955 F. Supp. 2d 868, 880 (N.D. Ill. 2013) (judicial estoppel based on non-party conduct appropriate when party received benefit from non-party's argument in previous action). That the Schurings and Poulter share an attorney does not counsel in favor of the application of judicial estoppel. Cottrell has cited no authority, and the Court is aware of none, that suggests parties should be bound by previous arguments or assertions of their attorneys in discrete lawsuits concerning discrete parties arguing discrete positions. Parties can, of course, be bound by the actions of their attorneys in litigating a case, but to bind parties by positions their attorneys have

taken in previous representations of unrelated litigants would stretch that principle beyond its breaking point. Moreover, the Court is hesitant to punish the Schurings themselves for their attorney's conduct. *See, e.g.*, *Reserve Hotels PTY Ltd. v. Mavrakis*, 790 F.3d 738, 745 (7th Cir. 2015) (Posner, J. dissenting) (judge found himself "increasingly uncomfortable" with dismissing cases for attorneys' errors).

Based on an analysis of the facts specific to this case, the Court finds that the equities do not counsel in favor of attributing any non-party's actions to the Schurings or applying judicial estoppel in this case. *See Grochocinski*, 719 F.3d at 796 (the consideration of judicial estoppel is "an equitable inquiry that turns on the specific circumstances of an individual case"). The motion for judgment on the pleadings based on judicial estoppel is therefore denied.

## II. The Schurings' Claims are not Preempted

Cottrell next argues that the Schurings' claims against it are completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), *et seq*. Section 301 "not only provides the federal courts with jurisdiction over controversies involving collective-bargaining agreements, but also authorizes the courts to fashion a body of federal law for the enforcement of" those agreements. *United Steelworkers of America, AFL-CIOCLC v. Rawson*, 495 U.S. 362, 368 (1990). "When a plaintiff brings a state-law cause of action *other than* for breach of a contract that literally falls within § 301, the court must carefully asses whether the claim is 'inextricably intertwined with consideration of the terms of [a] labor contract.' " *Olson v. Bemis Co., Inc.*, --- F.3d ---, No. 14-3563 2015 WL 5011951 at *4 n.5 (7th Cir. Aug. 25, 2015) (quoting *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)) (alteration and emphasis in original). "There is no § 301 preemption 'when the meaning of contract terms is not the subject of dispute.' " *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994)); *see also United*

*Steelworkers*, 495 U.S. at 369 (section 301 preempts state law tort claims only "if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without existence independent of the agreement"); *Crosby v. B-Line, Inc.*, 725 F.3d 795, 801-02 (7th Cir. 2013) (state law tort claim not preempted because elements of tort did not require interpretation of a labor contract). The Court must examine all relevant facts to make a case-by-case determination of whether a claim is preempted. *See In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 289 (7th Cir. 2001).

Cottrell contends that the CBA between Mr. Schuring and Cassens imposes the only safety standard governing rigs for Cassens employees, like Schuring, to the exclusion of common law or statutory standards of care. Cottrell has made and lost this argument at least seventeen times in cases involving similar tort claims. (*See* Dkt. No. 51 p. 3) (collecting cases). Indeed, the CBA prescribes certain safety standards to which the equipment used by Cassens employees must conform. None of the Schurings' claims against Cottrell, however, relies on those standards as the source of Cottrell's duty; whether the rig met the CBA specification is at most tangentially relevant to whether Cottrell violated any state law duty in manufacturing the rig. In this sense, the Schurings' claims against Cottrell are independent of the rights under the CBA. *See id.* at 288. Moreover, Cottrell was not a party to the CBA. While not necessarily dispositive, these factors weigh heavily against a finding that the Schurings' claims are preempted.

Cottrell has not set forth any facts that weigh in favor of preemption. Cottrell's argument that CBA interpretation is necessary to resolve the negligence claim because the content of the CBA is relevant to the duty of care it owed is unavailing. *See Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996) ("If the resolution of a state law claim depends on the

meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted and federal labor law principles must be employed to resolve the dispute.") (citation omitted). If at all, the CBA provisions relate only marginally to the duty of care that Cottrell owed. Such tangential review and consultation of the CBA, rather than interpretation, does not require preemption under § 301. *See Livadas*, 512 U.S. at 124 ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Crosby*, 725 F.3d at 800 (Section 301 does not completely preempt all claims that touch upon rights that have some connection to a CBA); *Douglas v. Am. Info. Techs. Corp.*, 877 F.2d 565, 569-70 (7th Cir. 1989) (only state law claims that require "interpretation" of a CBA are completely preempted); *Cf. Hernandez v. Cottrell, Inc.*, No. 10 C 1522, 2012 WL 4009696 at *3 (N.D. Ill. Sep. 12, 2012) (Dow, J.). The meaning of the CBA's terms is not the subject of dispute here. Because the Schurings' state law claims relating to Mr. Schuring's injury are not "inextricably intertwined with consideration of the terms of the labor contract" between Mr. Schuring and Cassens, Section 301 does not preempt those claims. *See Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

Nor does Cottrell's argument that interpretation of the CBA will be necessary to evaluate its affirmative defenses, namely voluntariness on Mr. Schuring's part and infeasibility of alternative designs of the rig, counsel in favor of preemption. *See Crosby*, 725 F.3d at 800-01 (defending against a claim by referring to a CBA does not "transform the action" into one brought under Section 301) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987)). The content of the CBA is irrelevant to the voluntariness of Mr. Schuring's conduct so the Court need not interpret that agreement in making a determination of voluntariness. Nor does the Court

need to interpret the CBA to determine whether other designs were feasible; Illinois law considers "cost, practicality and technological possibility" in determining the feasibility of an alternative design. *See, e.g.*, *Hansen v. Baxter Healthcare Corp.*, 764 N.E.2d 35, 45 (Ill. 2002). The safety standards that Cassens and its employees adopted in their CBA are related, at most, marginally to the feasibility of an alternative design. Cottrell cites no authority for the proposition that compliance with a single customer's CBA is a necessary condition of a finding of feasibility.

Because Cottrell is not a party to the CBA, the claims against Cottrell are independent of the CBA, and resolution of the claims does not require interpretation of the CBA, none of the claims against Cottrell are preempted. Cottrell's motion for judgment on the pleadings based on complete preemption is denied.

## CONCLUSION

For the reasons stated herein, Cottrell's motion for judgment on the pleadings based on judicial estoppel [43] and Cottrell's motion for judgment on the pleadings based on complete preemption [44] are denied in their entirety.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/29/2015

9